1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   SEAN JEFFREY RICHSON,          ) Case No. CV 14-7276-SJO (KK)
                                    )
12                 Petitioner,      )
                                    )
13           v.                     ) FINAL REPORT AND
                                    ) RECOMMENDATION OF UNITED
14   M.D. BITER, Warden,            ) STATES MAGISTRATE JUDGE
                                    )
15                 Respondent.      )
                                    )
16   _____ )
17

18          This Final Report and Recommendation is submitted to the Honorable S.

19   James Otero, United States District Judge, pursuant to 28 U.S.C. § 636 and

20   General Order 05-07 of the United States District Court for the Central District of

21   California.

22                                    I.

23                 SUMMARY OF RECOMMENDATION

24          On September 4, 2014, Petitioner Sean Jeffrey Richson, a California state

25   prisoner proceeding *pro se*, filed a petition for writ of habeas corpus by a person in

26   state custody pursuant to 28 U.S.C. § 2254, challenging his 2002 state conviction

27   for robbery and murder.  Respondent has filed a motion to dismiss this action as

28   untimely.  Petitioner opposes the motion, arguing this action should proceed

1   because he is entitled to equitable tolling and because he is actually innocent.

2   Petitioner has also filed a Request for Stay and Abeyance, requesting that this

3   action be stayed and held in abeyance until he exhausts an additional claim in state

4   court.  For the reasons set forth below, the Court recommends granting

5   Respondent's motion, denying Petitioner's Request for Stay and Abeyance, and

6   dismissing this action as untimely.

7                                      **II.**

8                       **PROCEDURAL BACKGROUND**

9   **A.    State Court Proceedings**

10          On April 22, 2002, after a jury trial in Los Angeles County Superior Court,

11  Petitioner and co-defendant Eric Lamont Nicholson were convicted of first-degree

12  murder, in violation of California Penal Code section 187(a), and second-degree

13  robbery, in violation of California Penal Code section 211.  Lodged Documents

14  ("Lodgs.") 1, 2.[1]  The jury also found true allegations that a principal had been

15  armed with a handgun, in violation of California Penal Code section 12022(a).  Id.

16  On May 20, 2002, Petitioner was sentenced to a term of 26 years to life in prison.

17  Lodg. 1.

18          Petitioner appealed his conviction.  On November 24, 2003, the California

19  Court of Appeal affirmed Petitioner's conviction.  Lodg. 2 at 2.

20          On December 26, 2003, Petitioner filed a petition for review in the

21  California Supreme Court.  Lodg. 3.  On February 18, 2004, the California

22  Supreme Court denied the petition for review.  Lodg. 5.

23          On May 24, 2010, the Los Angeles County Superior Court denied

24  Petitioner's request "for all transcripts and records" to assist him in an "appeal."

25

26  _____

27  [1] Respondent lodged numerous documents with a Motion to Dismiss filed on April

28  24, 2015.  See ECF No. 29.

1   Lodg. 6 at 137-39.[2]  The court gave several reasons for denying the request,
2   including that Petitioner did not "explain" his "delay" in seeking to collaterally
3   attack his conviction or state any valid basis for such an attack.  Id. at 138.
4        On October 9, 2012, Petitioner filed a request in Los Angeles County
5   Superior Court to vacate his convictions.  Id. at 140.  The court denied the request
6   by referring Petitioner to the May 24, 2010, denial of Petitioner's request for
7   records.  Id.
8        On November 27, 2012, Petitioner filed a state habeas petition in Los
9   Angeles County Superior Court.  Id. at 142.  On December 6, 2012, the court
10  denied the petition, explaining Petitioner had "failed to demonstrate that he was
11  prejudiced by the claimed errors of counsel."  Id. at 141-43.
12       On January 28, 2013, Petitioner filed a state habeas petition in the California
13  Court of Appeal.  Lodg. 7.  On February 6, 2013, the court summarily denied the
14  petition.  Lodg. 8.
15       On March 18, 2013, Petitioner filed a state habeas petition in the California
16  Supreme Court.  Lodg. 9.  On May 15, 2013, the court denied the petition, citing
17  People v. Duvall, 9 Cal. 4th 464, 474 (1995), and In re Swain, 34 Cal. 2d 300, 304
18  (1949).  Lodg. 10.
19       On April 29, 2014, the Los Angeles County Superior Court denied a state
20  habeas petition that Petitioner filed, explaining he had "not stated a claim in which
21  habeas relief can be granted."  Lodg. 6 at 143-44.
22
23
24
_____
25  [2] Lodged Document 6 is a printout of Los Angeles County Superior Court's
26  electronic docket for Petitioner's case.  See ECF No. 28 at 8 n.3.  Respondent
27  submitted this docket to the Court because Respondent "was unable to obtain a
    copy of . . . various superior court habeas petitions and denial orders"  Id.
28

On May 30, 2014, the Los Angeles County Superior Court denied a state habeas petition that Petitioner filed, explaining he had "not stated a claim in which habeas relief can be granted." Id. at 145-46.

On June 26, 2014, Petitioner filed a state habeas petition in the California Supreme Court. Lodg. 11. On August 27, 2014, the court denied the petition. Lodg. 12.[3]

On February 18, 2015, Petitioner filed a state habeas petition in Los Angeles County Superior Court. Lodg. 13. On February 26, 2015, the court denied the petition, explaining Petitioner's claims were without merit. Lodg. 6 at 147-48.

**B.    Federal Court Proceedings**

On September 4, 2014, Petitioner constructively filed the instant action.[4] ECF No. 1 at 9. On September 23, 2014, the Court issued an Order to Show Cause ("OSC") why this action should not be dismissed as untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). ECF No. 4 at 4. On October 3, 2014, Petitioner filed a response to the OSC, along with supporting

---

[3] Lodged Document 12 is a printout of the California Supreme Court's electronic docket. This Court cannot discern from the printout the grounds on which the California Supreme Court denied Petitioner's June 26, 2014, petition.

[4] Under the "mailbox rule," when a *pro se* prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010) (citation omitted). Here, Plaintiff signed the petition that commenced this action on September 4, 2014. ECF No. 1 at 9. Thus, the Court considers that date to be the date of filing.

Shortly after filing this action, Petitioner initiated another federal habeas action, challenging the same state conviction as this action. See Richson v. Biter, No. 2:14-cv-7723-SJO-KK, ECF No. 1. On November 20, 2014, with Petitioner's consent, the Court consolidated the actions and made the instant action the operative one. Id., ECF No. 12.

4

documents.  ECF No. 7.  In his response, Petitioner argues he is entitled to equitable tolling of AEDPA's statute of limitations because his post-conviction attorneys were ineffective and because he was mentally incompetent during the direct appeals process.  Id. at 2-3.  Petitioner further argues the Court should consider his petition because he is actually innocent of the conviction he seeks to challenge.  Id. at 3.

On December 17, 2014, with leave of the Court, Petitioner filed a First Amended Petition for Writ of Habeas Corpus ("Petition"), which is the operative petition in this case.  ECF No. 32.  Petitioner alleges multiple grounds for relief, under the Fifth, Sixth, and Fourteenth Amendments.  ECF No. 32 at 5-6.

On December 22, 2014, the Court ordered Respondent to address, in either a motion to dismiss or answer, "the issues raised in the Court's September 23, 2014 Order to Show Cause and petitioner's response filed on October 3, 2014."  ECF No. 19 at 1.  On April 24, 2015, Respondent filed a Motion to Dismiss the Petition ("Motion"), arguing the Petition is untimely.  ECF No. 28.  On May 11, 2015, Petitioner filed an Opposition to the Motion ("Opposition"), along with supporting exhibits.  ECF No. 30.

On June 18, 2015, the Court issued a Report and Recommendation that the Petition be denied as untimely and this action be dismissed with prejudice.  ECF No. 33.  On July 23, 2015, Petitioner filed a Request for Stay and Abeyance ("Request"), requesting that this action be stayed and held in abeyance until he exhausts an additional unexhausted claim in state court.  ECF No. 36.  On August 5, 2015, Respondent filed an opposition to Petitioner's Request.  ECF No. 41.  On August 13, 2015, Petitioner filed Objections to the Court's original Report and Recommendation.  ECF No. 42.  The Court herein issues a Final Report and Recommendation, addressing Petitioner's Request for Stay and Abeyance and Objections to the original Report and Recommendation.

1                                                 **III.**

2                       **<u>RELEVANT FACTUAL BACKGROUND</u>**

3         Because Petitioner argues he is actually innocent, the Court summarizes the

4 facts adduced at Petitioner's trial:[5]

5                       Pablo Ponce Juarez was employed at the Astroburger restaurant

6                       in Gardena. One of his duties included closing the restaurant at

7                       night.

8

9                       On April 17, 2000, Maria Manahan was driving by the

10                       restaurant sometime after 9:00 p.m. She saw a Hispanic male

11                       put his hands behind his head. An African-American man stood

12                       behind him. A third man sat at a table.

13

14                       Manahan decided to find a telephone to call the police. While

15                       she was looking for a telephone, she saw a man standing with

16                       his hands in his pockets. When she looked at him, he looked

17                       away toward the restaurant. She became frightened and drove

18                       on. She called the police when she got home.

19

20                       Gardena police responded to a call of a robbery in progress.

21                       When an officer arrived at the restaurant, he saw Juarez lying

22                       on the floor in a pool of blood. He also saw two cash registers

23

24 [5] This factual summary is drawn from the California Court of Appeal's opinion,

25 issued on November 24, 2003, and is thus "afforded a presumption of correctness that may be rebutted only by clear and convincing evidence." <u>Moses v. Payne</u>, 555

26 F.3d 742, 746 n.1 (9th Cir. 2008) (citations omitted). Petitioner adopted this summary for purposes of his December 26, 2003, petition to the California

27 Supreme Court. Lodg. 3 at 7.

28

with their cash drawers pulled out.

Other officers saw Nicholson and Richson walking near the restaurant. After checking the descriptions of the suspects, the officers shined the patrol car spotlight on the subjects. As soon as the spotlight illuminated Nicholson and Richson, they ran toward an apartment complex.

After a short pursuit, Richson complied with the officer's order to stop. Nicholson hid in the apartment complex carport. Eventually, Nicholson complied with the officer's orders to come out of hiding.

At the time of Richson's arrest, he was carrying a white plastic bag. Inside the bag police found a brown cloth glove, $180 and Juarez's wallet. During a booking search of Richson, police found a dark brown glove, a black bandana and a cutting tool. Near Nicholson's hiding place police found a .38-caliber revolver. The revolver contained five live rounds and one expended round. Police also found Juarez's gold necklace about six inches away from Nicholson as they handcuffed him. Police found keys to the restaurant in the shrubbery between the restaurant and the apartment complex.

After the police handcuffed Richson and Nicholson at the scene, they put paper bags on their hands to preserve any

gunshot residue (GSR). A sheriff's department criminalist later tested Richson and Nicholson for GSR. Nicholson tested positive for one particle unique to gunshot primer residue. This indicated Nicholson either handled a gun, fired a gun, had been in close proximity to a discharging firearm or had otherwise been in contact with GSR. Tests disclosed no particles on Richson.

Criminalists found an expended bullet in Juarez's clothing. The firearms examiner was unable to determine whether the bullet was fired from the .38-caliber gun found where Nicholson was hiding. He testified, however, that the expended bullet was similar to a bullet found in the gun. They both had a surface content that was primarily zink. Neither the examiner or other experts in his laboratory were familiar with ammunition of this type.

Police obtained a videotape from the restaurant's security system. The tape shows Juarez with his hands on his head and a man standing behind him. Another man is in the restaurant. Juarez took money out of the cash register drawers. At one point, Juarez is kneeling with his hands behind his head. The two men leave the restaurant. A short time later, the two men reenter the restaurant, go out of the camera's view for a moment and leave the restaurant again. One has a white plastic bag. The arresting officer testified that the two men on the videotape

1    were similar in appearance to Richson and Nicholson at the

2    time of their arrest.

3

4    Neither defendant put on an affirmative defense.

5  Lodg. 2 at 2-3.

6    The Court will discuss additional facts as they relate to the parties'

7  arguments.

8  **IV.**

9  **DISCUSSION**

10    The instant Petition was filed after April 24, 1996, the effective date of

11  AEDPA.  Therefore, the Court must apply the requirements for habeas relief set

12  forth in AEDPA when reviewing the Petition.  Soto v. Ryan, 760 F.3d 947, 956-57

13  (9th Cir. 2014).  AEDPA sets a one-year statute of limitations for a petition for writ

14  of habeas corpus filed in federal court by a person in custody pursuant to a

15  judgment of a state court.  28 U.S.C. § 2244(d)(1).

16  **A.    Petitioner Did Not File His Petition Within AEDPA's One-Year**

17  **Limitations Period.**

18    AEDPA "sets a one-year limitations period in which a state prisoner must

19  file a federal habeas corpus petition."  Thompson v. Lea, 681 F.3d 1093, 1093 (9th

20  Cir. 2012) (citation omitted).  Ordinarily, the limitations period runs from the date

21  on which the prisoner's judgment of conviction "became final by the conclusion of

22  direct review or the expiration of the time for seeking such review."  28 U.S.C. §

23  2244(d)(1).[6]  "When, on direct appeal, review is sought in the state's highest court

24

25  [6] "Although § 2244(d)(1) sets forth three alternative possible starting dates for the

26  commencement of the running of the statute of limitations, [Petitioner] does not

27  argue that any of these apply in this case."  Miranda v. Castro, 292 F.3d 1063,

(continued...)

28

9

but no petition for *certiorari* to the United States Supreme Court is filed, direct review is considered to be final when the *certiorari* petition would have been due, which is 90 days after the decision of the state's highest court.  Porter v. Ollison, 620 F.3d 952, 958-59 (9th Cir. 2010) (citations omitted).

Under AEDPA, Petitioner's conviction became final on May 18, 2004, *i.e.*, 90 days after the California Supreme Court denied Petitioner's petition for review on February 18, 2004.  Porter, 620 F.3d at 958-59.  AEDPA's one-year limitations period began to run the next day, on May 19, 2004, and expired on May 19, 2005. 28 U.S.C. § 2244(d)(1).  The instant action was not constructively filed until September 4, 2014.  Therefore, this action is untimely by over nine years under Section 2244(d)(1), absent tolling.

**B.    Statutory Tolling Does Not Render this Action Timely.**

"A habeas petitioner is entitled to statutory tolling of AEDPA's one-year statute of limitations while a 'properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending.'" Nedds v. Calderon, 678 F.3d 777, 780 (9th Cir. 2012) (quoting 28 U.S.C. § 2244(d)(2)).  "A petitioner who unreasonably delays in filing a state habeas petition would not be granted the benefit of statutory tolling because the petition would not be considered 'pending' or 'properly filed' within the meaning of § 2244(d)(2)."  Id. (internal citations omitted).  Moreover, "section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) (citation omitted).

Here, Petitioner filed his first state habeas petition on November 27, 2012, more than seven years after AEDPA's statute of limitations expired.  Section

---

[6](...continued)
1065 n.1 (9th Cir. 2002).

1   2244(d) does not permit the reinitiation of the limitations period.  Id.  Thus,

2   statutory tolling does not render this action timely.

3   **C.   Equitable Tolling Does Not Render this Action Timely.**

4       **1.   Legal Standard**

5       In addition to statutory tolling, the "AEDPA limitations period may be

6   tolled" when it is "equitably required."  Doe v. Busby, 661 F.3d 1001, 1011 (9th

7   Cir. 2011) (citations omitted).  The "threshold necessary to trigger equitable tolling

8   [under AEDPA] is very high, lest the exceptions swallow the rule."  Bills v. Clark,

9   628 F.3d 1092, 1097 (9th Cir. 2010) (citation and internal quotation marks

10  omitted).  "The petitioner must establish two elements:  (1) that he has been

11  pursuing his rights diligently, and (2) that some extraordinary circumstance stood

12  in his way."  Rasberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (citation and

13  internal quotation marks omitted).  The petitioner "must show that the

14  extraordinary circumstances were the cause of his untimeliness."  Spitsyn v.

15  Moore, 345 F.3d 796, 799 (9th Cir. 2003) (citations and internal quotation marks

16  omitted).  Equitable tolling determinations "turn[] on an examination of detailed

17  facts."  Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002).

18      **2.   Petitioner's Alleged Grounds for Equitable Tolling**

19          **a.   Ineffective Post-Conviction Counsel**

20      Petitioner argues he is entitled to equitable tolling because his post-

21  conviction lawyers were negligent and ineffective.  ECF No. 7 at 1-2.  Petitioner

22  states that, on March 15, 2004, attorney Sheldon L. Levitin "was hired to file a writ

23  of habeas corpus" on Petitioner's behalf but failed to do so.  Id. at 1.  On October

24  26, 2005, Petitioner's parents, who had hired Levitin, filed a complaint against him

25

26

27

28

1   with the California State Bar, with Petitioner's authorization and consent.[7]  Id. at 8-

2   9.  On January 4, 2006, Levitin terminated his retainer agreement with Petitioner's

3   parents.  Id. at 5-7.  On March 8, 2006, Levitin sent Petitioner's file, including the

4   trial transcript and briefs on direct appeal, to Petitioner's parents.  Id. at 13.  On

5   March 15, 2006, Petitioner's parents signed that they received the file.  Id. at 12.

6       Petitioner appears to claim that, after the termination of the retainer

7   agreement with Levitin, he hired a series of other lawyers to file a habeas petition

8   on his behalf, each of whom failed to render their promised services or properly

9   communicate with Petitioner.  Id. at 1-2.

10              **b.    Mental Impairment**

11      In arguing for equitable tolling, Petitioner also "urges this esteemed Court to

12  consider Petitioner's mental disposition at the time of the offense."  Id. at 2.

13  Petitioner states he was 14 years old at the time of the offense, in April of 2000.

14  Id.  Petitioner states he was "a subject of" the "California Department of

15  Corrections' mental health program" through the "direct appeal process."  Id.

16  Petitioner states he was therefore "not competent to assist in the appellate process."

17  Id. at 3.

18      **3.    Analysis**

19              **a.    Ineffective Post-Conviction Counsel**

20      "Though ordinary attorney negligence will not justify equitable tolling, . . .

21  where an attorney's misconduct is sufficiently egregious, it may constitute an

22  'extraordinary circumstance' warranting equitable tolling of AEDPA's statute of

23  limitations."  Spitsyn, 345 F.3d at 800 (citation omitted).  Here, Petitioner is

24  arguably entitled to equitable tolling for the duration of Levitin's alleged

25  misconduct, i.e., from March 15, 2004, when Levitin was hired, until March 15,

26  _____

27  [7] The State Bar concluded Petitioner's parents' complaint against Levitin did "not
    warrant action."  ECF No. 7 at 12.

28

12

2006, when Levitin returned the case file to Petitioner's parents.  See id. at 798 (finding petitioner entitled to equitable tolling, where the attorney he hired to file a habeas petition failed to do so and refused to return relevant records until after the filing deadline).  However, Petitioner did not constructively file this action until September 4, 2014, more than eight years after the completion of Levitin's alleged misconduct on March 15, 2006.  Petitioner's assertions about the lawyers he hired after Levitin are "vague and unsubstantiated" and, hence, do not warrant additional equitable tolling.  Milligan v. Scribner, 220 F. App'x 746, 747 (9th Cir. 2007); see also Lott, 304 F.3d at 923 (stating equitable tolling requires an "examination of detailed facts").  Thus, even assuming equitable tolling for the period of alleged misconduct by Levitin, this action is untimely by over eight years.

### b.   Mental Impairment

"[E]ligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test . . . ."  Bills, 628 F.3d at 1099.  First, the petitioner "must show that his mental impairment was an extraordinary circumstance beyond his control, by demonstrating the impairment was so severe that either (a) petitioner was unable rationally or factually to personally understand the need to timely file, or (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing."  Id. at 1099-1100 (citation, footnote, and paragraph breaks omitted).  Second, "the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance."  Id. at 1100 (citation omitted).  "In practice, then, to evaluate whether a petitioner is entitled to equitable tolling, the district court must:  (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after

1  considering the record, whether the petitioner satisfied his burden that he was in

2  fact mentally impaired; (3) determine whether the petitioner's mental impairment

3  made it impossible to timely file on its own; and (4) consider whether the

4  circumstances demonstrate the petitioner was otherwise diligent in attempting to

5  comply with the filing requirements." <u>Id.</u> at 1100-01.

6      Petitioner has not specified what severe mental impairment he was being

7  treated for during the direct appeals process, or how that impairment prevented him

8  from providing assistance.  However, even assuming Petitioner had a severe mental

9  impairment that prevented him from assisting during the direct appeals process,

10  Petitioner has not alleged or shown (1) the impairment continued after the

11  conclusion of the direct appeals process; (2) the impairment made it impossible for

12  him to timely file a habeas petition; or (3) he was otherwise diligent in attempting

13  to comply with the filing requirements.  <u>Bills</u>, 628 F.3d at 1100-01.  Thus,

14  Petitioner's claim of mental impairment is insufficient to merit equitable tolling.

15  <u>See</u> <u>Lott</u>, 304 F.3d at 923; <u>see also</u> <u>Foolen v. Felker</u>, No. CV 07-8161-GW (AN),

16  2009 WL 6058449, at *8 (C.D. Cal. 2009) (citing other cases in which a petitioner

17  alleged mental impairment but failed to allege how the impairment prevented the

18  petitioner from filing a timely habeas petition).

19  **D.    Petitioner Has Not Demonstrated Actual Innocence.**

20      Petitioner also argues the Court should excuse the Petition's untimeliness

21  because he is actually innocent of the crimes of which he was convicted.  ECF No.

22  30 at 1.  In support of this argument, Petitioner notes (1) on the night of the

23  offense, Nicholson, his co-defendant, made a statement to police, which the trial

24  court ruled inadmissible, in which Nicholson "accepted full responsibility and

25  exonerated Petitioner"; (2) during a January 2002 interview with a police detective

26

27

28

14

and a deputy district attorney, Petitioner's co-defendant Stanley Johnson, Jr.[8] stated Petitioner had never met Nicholson prior to April 17, 2000 and was sitting down at the time of the shooting; (3) an evaluation by a court-appointed psychiatrist, dated February 21, 2001, which was not admitted at trial, stated "it would be reasonable to believe" Petitioner "did not act of his own free will" during the offense; and (4) the prosecution presented no evidence showing Petitioner knew Nicholson was armed or intended to kill, or showing Petitioner's motive in entering the restaurant with Nicholson.  Id. at 2-5; see also ECF No. 30-2 at 3 (police report stating Nicholson said Petitioner "had nothing to do with" the offense); ECF No. 30-3 at 9, 26 (transcript of Johnson's January 2002 interview with police detective and deputy district attorney); ECF No. 30-4 (court-appointed psychiatrist's confidential report to defense counsel).

"A federal habeas petitioner can overcome a procedural default, including a failure to comply with the statute of limitations, by demonstrating actual innocence of the crime underlying his conviction."  Vosgien v. Persson, 742 F.3d 1131, 1134 (9th Cir. 2014) (citing, *inter alia*, Schlup v. Delo, 513 U.S. 298, 313-15, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)).  Prisoners "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  Larsen v. Soto, 742 F.3d 1083, 1088 (9th Cir. 2013) (citations and internal quotation marks omitted).  "This exacting standard sets an extremely high hurdle" that is met "only in the extraordinary case."  Stewart v. Cate, 757 F.3d 929, 938 (9th Cir. 2014) (citations and internal quotation marks omitted).

Here, Petitioner has not submitted any evidence, let alone "new evidence" that would lead the Court to conclude "it is more likely than not that no reasonable

---

[8]    It is unclear from the record what offenses Johnson was convicted of in connection with the events of April 17, 2000.

1   juror would have found petitioner guilty beyond a reasonable doubt." Id.  Thus,

2   Petitioner has not demonstrated actual innocence to overcome his failure to comply

3   with AEDPA's statute of limitations.  Vosgien, 742 F.3d at 1134.

4   **E.    Petitioner's Request for Stay and Abeyance Should Be Denied.**

5          In his July 23, 2015 Request for Stay and Abeyance, Petitioner requests that

6   the Court stay this action and hold the Petition in abeyance while he exhausts an

7   unexhausted claim based upon the California Supreme Court's June 2, 2014

8   decision in People v. Chiu, 59 Cal. 4th 155, 172 Cal. Rptr. 3d 438, 325 P.3d 972

9   (2014).[9]  See ECF No. 36.

10         **1.    Requirements for a Stay and Abey Procedure**

11         A state prisoner must exhaust his or her state court remedies before a federal

12  court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1)(A);

13  O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 144 L. Ed. 2d 1

14  (1999).  To satisfy the exhaustion requirement, a habeas petitioner must fairly

15  present his or her federal claims in the state courts in order to give the State the

16  opportunity to pass upon and correct alleged violations of the prisoner's federal

17  rights.  Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865

18  (1995) (per curiam).  The inclusion of both exhausted and unexhausted claims in a

19

20

21

22  [9]    Petitioner does not specify the nature of this unexhausted claim.  In Chiu, the
23  California Supreme Court held "an aider and abettor may not be convicted of first
    degree premeditated murder under the natural and probable consequences
24  doctrine" and that "liability for that crime must be based on direct aiding and
    abetting principles."  Chiu, 59 Cal. 4th at 158.  Hence, the California Supreme
25  Court found a trial court committed instructional error when it failed to instruct the
26  jury as to this principle.  Id.  The California Supreme Court's ultimate holding in
    Chiu suggests Petitioner's unexhausted claim is a claim of instructional error in the
27  trial court proceedings.
28

federal habeas petition renders it mixed and subject to dismissal without prejudice. See Rose v. Lundy, 455 U.S. 509, 522, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

The Court may stay a mixed federal habeas petition pursuant to either Rhines v. Weber, 544 U.S. 269, 125 S. Ct. 1528, 161 L. Ed. 2d 440 (2005) or Kelly v. Small, 315 F.3d 1063 (9th Cir. 2003).  Under Rhines, a district court has discretion to stay all of the claims in a mixed federal habeas petition to allow a petitioner time to present his unexhausted claims to state courts.  Rhines, 544 U.S. at 276.  This "stay and abeyance" procedure is available only in limited circumstances, and only when: (1) there is "good cause" for the failure to exhaust unexhausted claims; (2) the unexhausted claims are not "plainly meritless"; and (3) the petitioner did not intentionally engage in dilatory litigation tactics.  Id. at 277-78.  The "good cause" inquiry is centered on "whether the petitioner can set forth a reasonable excuse, supported by sufficient evidence," to justify his failure to exhaust the unexhausted claim in state court.  Blake v. Baker, 745 F.3d 977, 982 (9th Cir. 2014).

Contrarily, a stay pursuant to Kelly requires compliance with the following three-step procedure: (1) a petitioner must file an amended petition deleting his unexhausted claims; (2) the district court "stays and holds in abeyance the amended, fully exhausted petition, allowing petitioner the opportunity to proceed to state court to exhaust the deleted claims"; and (3) petitioner must subsequently seek to amend the federal habeas petition to reattach "the newly-exhausted claims to the original petition."  King, 564 F.3d at 1135.  However, the petitioner is only allowed to amend his newly-exhausted claims back into his federal petition if the claims are timely under AEDPA or "relate back" to the exhausted claims in the pending petition.  Id. at 1140-41, see also Mayle v. Felix, 545 U.S. 644, 662-64, 125 S. Ct. 2562, 162 L. Ed. 2d 582 (2005).  If the newly-exhausted claim is not timely under AEDPA or the relation-back doctrine, it may not be added to the

1  existing petition.  <u>Haskins v. Schriro</u>, No. CV 05-2352-PHX-MHM (JM), 2009

2  WL 3241836, at *3 (D. Ariz. Sept. 30, 2009).  If amendment is futile, a stay is

3  inappropriate.  <u>Id.</u> at *7.

4        **2.    Analysis**

5        In his instant Request for Stay and Abeyance, Petitioner does not specify

6  whether he requests a stay pursuant to either <u>Rhines</u> or <u>Kelly</u>.  <u>See</u> ECF No. 36.

7  The Court construes the Request liberally and considers Petitioner's eligibility for

8  both procedures.

9        The Court finds Petitioner is not entitled to a <u>Rhines</u> stay.  Petitioner has not

10  demonstrated "good cause" (or any cause) for his failure to exhaust his

11  unexhausted claim in state court earlier.  <u>Rhines</u>, 544 U.S. at 277.  The California

12  Supreme Court's June 2014 decision in <u>People v. Chiu</u>—the case on which

13  Petitioner's unexhausted claim relies—was issued over a year prior to Petitioner's

14  Request and approximately three months before Petitioner commenced the instant

15  action. 59 Cal. 4th 155.  In the instant Request, Petitioner does not provide any

16  reason as to why he did not exhaust his claim in state court sooner upon issuance of

17  the California Supreme Court's decision.  Moreover, the Court notes Petitioner

18  delayed in filing the instant Request until after the Court's original Report and

19  Recommendation that this action be dismissed.  The timing of the Request suggests

20  it is an intentionally dilatory litigation tactic designed to prolong this action and

21  avoid dismissal of the Petition.  <u>Rhines</u>, 544 U.S. at 278.  Accordingly, Petitioner

22  is ineligible for a stay under <u>Rhines</u>.

23        Furthermore, the Court finds a <u>Kelly</u> stay would be futile here because

24  Petitioner's unexhausted claim would be untimely.  As discussed in Sections IV.A-

25  C., the instant Petition is untimely by over eight years, even with tolling.  If

26  Petitioner were to raise his unexhausted claim after exhausting it in state court, it

27  would also be untimely.  Hence, to the extent Petitioner requests a <u>Kelly</u> stay,

28

1    Petitioner's request must be denied as futile.  See Haskins, 2009 WL 3241836, at

2    *3.

3                                      **V.**

4                            **RECOMMENDATION**

5           IT IS THEREFORE RECOMMENDED that the Court issue an Order:  (1)

6    accepting this Final Report and Recommendation; (2) granting Respondent's

7    Motion to Dismiss; (3) denying Petitioner's Request for Stay and Abeyance; and

8    (4) directing Judgment be entered denying the Petition and dismissing this action

9    with prejudice.

10

11

12   DATED: August 24, 2015       _____

13                                HON. KENLY KIYA KATO
                                  UNITED STATES MAGISTRATE JUDGE
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        19